Higgs v. Costa Crociere S.P.A. Let me tell you, if you get me to exclude prior false and you stand up and tell the jury that she has no prior false, I'm going to sue a sponte to declare a mistrial. I tried cases 14 years. I don't understand. What are you thinking when you did that? Did you try the case? Your Honor, I was second chair in the case. I was. Did you tell the jury? Who told the jury she has no prior false? It was our lead counsel, Mr. Robert Chaffin. Is he here? No, Your Honor, he's not. Okay. However... You didn't do it just once. I have it from the transcript three times, and it's very clear, and they can't say a thing about it. And that's fundamentally unfair. Do you agree with that? I don't know whether you waived it or not, but that is fundamentally unfair. Do you agree with that? Your Honor, I agree that if it's as clear as Costa makes it out to be, it would be fundamentally unfair. Okay, let me read you exactly what he said and tell me why it's not clear. I'd be happy to, Your Honor. Okay, I hope you do. So let me go find where it is. What was the first statement while I look for it? Quote what it is. It's in the record at page 856. State what your counsel said the first time. He's in rebuttal, is that right? Yes, Your Honor. Rebuttal to which the other side can't respond? Yes, Your Honor. Okay, and what does he say? Mr. Chaffin said that Mrs. Higgs had never fallen before. Right, and that was not true. That was a bold-faced lie. No, that's incorrect, Your Honor. Why is that? The reason why is because our motion in limine. So this goes back to our motion. No, wait a minute. I thought she admitted she had fallen before in her deposition. She said she had tripped and fallen. She said she had slipped and fallen. She never testified that she had just spontaneously fallen down, which was a distinction that counsel for Costa made in his closing argument. That's not our distinction. That's a distinction that counsel for Costa made in the record in his closing argument. All right, here's what he said. Did you know that Mrs. Higgs has never fallen before, never been injured before, never had an accident before? Okay, whether slipped and fallen. That's what he says, right? Yes, Your Honor, that's what he said. Never been injured before. Is that a false statement? That is, yes, Your Honor. Okay, never had an accident before. Is that a false statement? Well, insofar as, yes, Your Honor. Yeah, because she said I slipped and fell before. I didn't just fall. And then the next time, that's at 248, then 253, I don't know if that gives you a risk of falling or not. She had never fallen before, never had. That was false, unless you want to try to say tripped and falling. You know what that sounds like, what is the meaning of is. But that's what it sounds like to me. She said she'd never fallen before. And you say why that wasn't a lie is because she said she had slipped and fallen as opposed to an accident fall or something. Is that why you say that's not a lie? Yes, Your Honor. Okay, and then he says third time at 256, three pages later, and she didn't fall down and stumble all the time. That one's a little more. But she said in a deposition she had fallen once a month or something like that. Did she say that in the deposition? No, Your Honor. What did she say about once a month in the deposition? She doesn't say anything about falling once a month. Okay, so why does that not, under fairness, require a new trial? Your Honor, it doesn't, under fairness, require a new trial for a number of reasons. First of all, as I just said, we had a cognizable argument that that was not something that was excluded under the motion to limine, because her spontaneously falling down for her knees giving way, for example, was not something that came up in her deposition. I couldn't on that occasion. That was a possible what could have happened here. Her knees could have given way. And she never said that in her deposition. I know that, but if that had happened to her quite a few times before, they could have shown that could possibly have been a causation here, right? If that had come in, right? Yes, but they didn't have evidence to that effect. They had trip and fall, slip and fall evidence. They didn't have knees giving out, falling down on your own evidence. I thought you just said she testified in the deposition sometimes her knees gave way. No, Your Honor. What did she testify in her deposition? In her deposition, which is in the record at page 41 and 42, she testifies that she has slipped on ice in the past because she's from Michigan and that she has tripped going up or down stairs and once in her— Because she doesn't lift her foot up enough. Yes, Your Honor. And once she believes that she kicked a chair leg in her daughter's house and caught herself. That's the only testimony she gave. Okay, and that's fine. So she has fallen before? Tripped and fallen and slipped and fallen. She's had accidents before? Yes, Your Honor. Okay, she's been injured before from falling accidents. She said that 10 years before she tripped on some stairs and broke her foot, more than 10 years prior to this incident. Okay, that's the last time she had medical attention for a fall? That's the last time she had medical attention for a fall, according to her deposition. Let me ask you this in response to Judge Hull's questions. You admitted, if I heard you correctly, that your co-counsel made at least one incorrect statement to the jury. Why wouldn't that in and of itself, standing alone, be enough for us to send this case back for a new trial? It would not be enough, Your Honor, because it does not meet the onerous burden of plain error, which is the burden that Costa has to meet because it failed to object. These arguments, which the former Fifth Circuit said in Woods v. Burlington Northern case, these arguments, which were apparently so severe and egregious at trial, went by numerous times without so much as a peep from Costa's experienced trial counsel, who has 32 years of experience trying cases, maritime cases, in the Southern District of Florida, and knows the rules, and for whatever reason, reasons known only to him, deliberately chose not to object multiple times. And if you look at this court's past cases, there are much more egregious things that have been said where this court has refused to find plain error. How would I object? I've got a ruling by a United States District Judge on a motion in limine telling me that any evidence about prior falls is more prejudicial than probative. What do I say to the jury in an objection? To the judge, Your Honor? To a false statement that your co-counsel just made to this jury. What do I say in my objection? You object. You say, Your Honor, we have an objection. May we approach? This is a false statement that this lawyer just made. What do you think that judge would have done? We ask that you give, I think Costa should have asked for a curative instruction. They could have asked for a mistrial. They could have asked Judge Kahn to reopen the evidence. Would you agree that should have been struck if they had timely objected or would you be arguing at the bench? You've already said her prior falls are irrelevant and they have nothing to do here. So those were different. You just said that to me. You just said why this was not a lie. You say it's not inaccurate. You would have been making that argument. We didn't do anything wrong here. We would have presented the argument at the bench to Judge Kahn that I just presented to Your Honor and perhaps Judge Kahn would have overruled their objection, perhaps he would have sustained it, at which point they would have had a number of remedies at their disposal to ask for under the rules, but they asked for none of them. They did nothing. They made not one sound in response to this argument, which is apparently . . . I wouldn't jump up and when I don't have a rebuttal, I wouldn't have jumped up right in the middle of the testimony. I might have asked if the jury goes out. I might have raised it then and perfected the record, although we have a lot of case law that says when you've raised an issue on a motion in limine, you don't have to resurrect it again at the close of the evidence. I would point out, Your Honor, we closed the evidence at like 4.30, 4.45 that day, so we went home for the day. The jury deliberated for about 10 or 15 minutes. We went home for the day. We came back the next morning. So Counsel for Costa had an entire afternoon and night to sleep on this and think about whether or not to go in the next morning and say, This is where I've tried cases. It's kind of a culture of the place that you don't object during the argument. I don't know what the rules are, where the culture is, where you are. Is that frowned upon where you are? No, Your Honor, it's not. And in this case . . . Do people jump up all the time during closing arguments of other counsel without a problem? Yes, Your Honor, and in fact, Counsel for Costa objected during our closing argument. The objection that he made was to a different remark which pertained to, Mrs. Higgs deserves to be treated fairly. He objected. Judge Kahn sustained his objection. So the only time they complained, Judge Kahn gave them exactly what they wanted. And then these other allegedly egregious comments are made and not so much of a sound comes from Counsel Table for Costa in response. Why wasn't this excluded evidence of prior falls also extremely relevant to the comparative damages issue? It wasn't extremely . . . In my opinion, and again, I can tell you about Judge Kahn's ruling, our contention is it's not extremely relevant because the only thing she testified to was slipping on ice, which has nothing to do with tripping on a bucket, and tripping on stairs, tripping going up and down stairs. I thought you said in her deposition she also said every now and then her knees just buckled or gave away. No, Your Honor, I'm sorry. I said that she did not . . . she never said that. She never gave that testimony. And that was what Mr. Chaffin was referring to when he's . . . when after Counsel for Costa in his closing argument said, maybe it wasn't really a bucket, maybe her knees just gave out. Mr. Chaffin then stood up in response and said she'd never fallen before. And what he was talking about was spontaneous falls, not that she had never tripped or fallen or slipped or fallen because they had no evidence in her deposition that she had ever just fallen down. One last question, and I'll leave you alone, about why I think this case probably deserves a new trial, and I'm speaking just for myself. How do you justify an award of damages of $1.3 million? In this case where her . . . I call them special damages. I don't know what . . . and I was a trial lawyer. I was a trial lawyer, but we used to call them special damages. $16,000 in special damages here. Clearly she had some pain and suffering. I go along with that. She had an operation. She had screws put in. She had a plate put in, but recovered pretty well as I understand the state of the record. How do you justify $1.3 million? Because first, Your Honor, under the standard that's applicable, Judge Kahn applied the correct standard, and he reached the correct result. Counsel mentioned . . . Applied what correct standard? He applied the standard which we argue applies under maritime law, which is not this court's standard from Bravo v. United States. That applying Florida state court law, a size-tested verdict, is inapplicable because that only applies in Federal Tort Claims Act cases. That's a congressional mandate in a federal statute. What is the standard that you claim applies? The standard that Judge Kahn applied was to look at whether the verdict exceeds the amount established by the evidence, whether it shocks the conscience, and whether it indicates passion, prejudice, or some other improper motive. In his motion for new trial order at page 942 of the record, he goes through a very detailed analysis of all of the evidence that he believed supported the verdict and goes through each of those prongs and arrives at a sound decision that the jury's verdict was not against the great weight of the evidence and did not shock the conscience and bared a rational relationship. Now, I want to address a question that you asked, Your Honor, Judge Dubina, about where the $500,000 came from. We don't know exactly where it came from because we can't be in the jury's mind, but we have a good idea. It came from counsel for Costa. In their closing argument, the first lawyers to mention a dollar figure was counsel for Costa. He stood up and said plaintiff's counsel is going to ask you for a number for general damages, probably something like $500,000. Was that on the verdict form or was it just a general verdict form? I'm sorry, Your Honor. It was what? I don't understand. Was $500,000 on the verdict form or did they break it out or was it just a general verdict form? There was a line for past general damages, future general damages, and a line for past medical expenses. Okay. And so what were the first two lines? For past general damages, they awarded $500,000. Okay. For future general damages, they awarded $800,000. And they awarded the $16,000 and change that they were instructed to award. And you've cross-appealed on that issue? Yes, Your Honor. And to be clear, the relief we're seeking is only insofar as this court finds that that particular item of damages is separate and distinct enough that the court can remand only with respect to that issue. To the extent the court finds that it's not separate and distinct enough, then we withdraw our appeal on that issue and we ask the court to affirm the judgment in its entirety. However, the jury heard $500,000 as a suggestion of what it should award in general damages, not initially from us, from counsel for Costa, and then they go in and they award exactly that. We know the jury was working hard on its calculation of general damages because 10 or 15 minutes after they retired to deliberate, they sent out a question, if we decide that we're going to award general damages, how do we make that calculation? They ask that. And so if you look at . . . What did the judge tell them? He said you have the instructions and it's in the instructions. And did they have the instructions in writing out in the jury room? Your Honor, I'm not exactly sure if they had the . . . I believe that they did because he referred them back to the instructions and what they'll say in terms of general damages. Can I ask a question? Did her medical records indicate that she had fallen a number of times in 2014? Your Honor, I don't recall. As I stand here, I don't recall exactly what her medical records said on that issue. She had fallen five or six times between 2014 and 2015? I don't remember that either. Again, Your Honor, I don't, without referencing, without looking at the medical records. But I would say that Costa was allowed, if you'll see in the record, to present a substantial amount of evidence of her being a fall risk, being unstable, having knee problems, being wobbly. They presented a number of pieces of evidence. Counsel said eight times in his closing argument, she's a fall risk. So to act as though this prior fall evidence was the smoking gun, without which Costa had nothing, is simply not true. We also know that . . . It was key evidence and you were successful in getting it excluded, right? Yes, Your Honor. And there's a reason. Why did you file the motion and let me exclude it? Because you thought the probative value was outweighed by the prejudice. That's what you tell the court, right? Yes, but we didn't seek to exclude it. It was highly prejudicial, right? Yes, Your Honor. But if I may, we didn't seek to exclude it. We asked the court to instruct Costa to approach the bench before going into it and to get a definitive ruling on the record. That was the relief sought in our motion in limine. Not an outright . . . But what did the district court rule? He said your motion in limine is granted, meaning he granted our request that they have to approach, which is why it's a tentative ruling, not a definitive ruling, and why Costa must prove plain error with respect to that ruling, not abuse of discretion. This court . . . And if I may, I see that my time is up, Your Honor, so if I may briefly . . . Thank you. I think we have it, unless it's something entirely new. No, Your Honor. Just to once again clarify, we asked the court to affirm the judgment in its entirety with the exception of the collateral source issue. Thank you. For the appellant, Mr. McAlpin, you reserve four. Yes, Your Honor. Was the motion in limine a tentative ruling? Not at all, Your Honor. It's very clear. The judge says the motion is granted. I will grant the motion. Granted to what? What else did he say in that order? He said I'll grant the motion in limine. The motion in limine asks, and it's a broad motion in limine, asks to preclude any evidence of prior falls. That's what it asked for. Period. Yes, sir. Yes, sir. If we look at the motion in limine, it says that. The judge says I'm going to grant the motion. I find it's a 403 issue, you know, probative value, unfair prejudice, outwards motivation. You went to trial believing there was no way you could introduce any evidence of prior falls in the plaintiff? 100%. That's why we redacted the medical records to delete any reference to prior slip and falls, delete any reference to having slipped once a month. All right. Can you answer Judge Rustani's question? She had one about whether there was, I think you said two? The medical records, evidence of six falls in 2014, and a number of falls between July to July 2014-15. Absolutely, Judge. Let me just tick off what the medical records showed and what they were redacted. The trial exhibit 7.1 indicated that there was an injury to the right knee, status post fall after tripping. That's trial exhibit 7.1. It was redacted to delete that language I just read. Do we have a date on that fall? Yes, Your Honor. That was August 2013, 16 months, 16 months before the accident. Okay. Keep going. Give us the dates of the prior falls, say, within the previous two to three years. Yes, Your Honor. Shown by medical records. Yes, Your Honor. Trial exhibit 7.4, three months before the fall. It's September 2014, about three months before the fall, indicated that Ms. Higgs had fallen in past year at least once a month. I believe that's an exact quote of what was redacted from that medical record three months before. Trial exhibit 7.9 is a July 2015 physical therapy initial evaluation. Now, we're after the accident, and Ms. Higgs is getting evaluated for her therapy, and the therapist is giving a history of her past medical condition. This is what Judge Rustani asked about. 5-6 falls within prior year. Balance problem. The patient does tend to trip on her foot. That's 7.9. There was two Facebook posts which were also excluded. Exhibit 69.4, it was attached to our opposition to the motion to eliminate. I have it, too, referring to a post where it's saying people can trip over thin air. Ms. Higgs said, I have that trait, too. Exhibit 69.5, which again is in opposition to the motion to eliminate. Ms. Higgs said in a Facebook post, I've been walking wrong for years. In her deposition, so those are the medical records in the Facebook posts. In her deposition, I asked the questions, and I'll just read exactly what it is so the court can see what Ms. Higgs testified and what we weren't allowed to present. I'm on page 33 of Ms. Higgs' pretrial deposition. Before you went on the ship, had you ever fallen before? Answer, no. I trip sometimes, but no, not really, no. Question, not really, not really. It's kind of a vague answer. Answer, I know. Let me ask the question again so we're all clear. Before you went on the Costa Luminosa in December 2014, had you ever tripped before and fallen down? Answer, yes. I'm just trying to think because, yes, I have fallen before, yes. Question, how many times? Answer, I think three or four. Question, when were they in proximity to the Costa trip? In other words, was it a month before or was it a week before? Was it two weeks before, six weeks before? Answer, probably maybe a year before. And then we continue. She starts talking about ice. I bring her back to Falls. I'm on page 34 now, line 18. Your time has expired. I have to kind of keep it balanced. So I think we have it. Okay, thank you so much, Your Honor. We ask that the Court reverse and remand the case for a new trial. Appreciate it. We'll take a recess at this time.